### D. Pressly, Superintendent of Education of Oktibbeha County v. W. H. Ellis et ux. et al.

1. Trustee and cestui que trust.—It is no less a rule of law than the suggestion of natural justice, that an agent or trustee holding a confidential relation, whether under the law of the land or by appointment by an individual, shall conduct the business of

his trust with fidelity to him or those for whom he acts, and follow the line of duty prescribed for him by the appointing power.

2. TRUSTEES OF TOWNSHIP SCHOOL LANDS.—Under the act of congress of March 3, 1803, which "reserved the 16th sections in each township for the support of schools therein," the trustees are authorized to lease the lands, upon the terms therein stated, to raise a fund to give practical and beneficial effect to the grant; and it was the intention of the act to avoid, as far as the utmost prudence could suggest, the hazard of loss by insolvent lessees. The trustees, on leasing the land, are required to take such security as they may approve, and the law raises a special mortgage security on the land, and forbids conveyance till payment. Wherefore, a conveyance under any circumstances, before payment actually made, does not discharge the land of its lien; and even a purchaser from the lessee, without notice, will not be protected against the lien.

3. SAME.—The leased premises being liable, under the act of congress, for payment of the money for the lease, even when sold for value to an innocent purchaser without notice, a fortiori the premises are liable when the lessee is himself one of the trustees, and combined with his fellows in the board to violate the trust.

4. SAME—BANKRUPTCY—JURISDICTION.—The bankruptcy of the lessee or purchaser of the 16th section school lands does not alter the case, either as to the liability of the property to the lien for the lease money, or the jurisdiction of the state court over the person or subject-matter.

ERROR to the chancery court of Oktibbeha county. POLLARD, Chancellor.

A statement of the case is contained in the opinion of the court.

*Miller & Muldrow*, for plaintiff in error.

1. The powers of a trustee are limited and special, and he is obligated by his relation to the utmost diligence, fidelity and good faith. His *cestui que trust* is not bound by his acts, except so far as they are authorized by the powers specially conferred on him. Story Eq. Jur., title, Trustees; Hill on Trustees. Property sold by an administrator or guardian remains subject to the lien for the purchase money in the hands of a purchaser or his assignee, in the same manner as if a mortgage had been taken on it. Miller, Adm'r v. Helm, 2 S. & M. 687; Walker v. Fuqua, 24 Miss. 646. It may well be doubted whether any act of an administrator, short of receiving actual payment of purchase money, will discharge a lien not intended

for his benefit, but for his estate. Elliott v. Cowan, 5 S. & M. 91; Hoggate v. Wade, 10 ib. 143.

2. The lien, not waived by the execution of the deed of lease for the reason referred to and particularly set forth in the pleadings, was made while the defendant, Ellis, was one of the board of trustees; and, according to a well established principle relating to the conduct in respect to the trust property, the trustee can derive no personal benefit from his dealing with the trust fund or property, much less can he, after his relation of trustee has ceased, hold on to the trust property or the proceeds thereof improperly acquired during the continuance of his trusteeship. A court of equity will force him to disgorge. 1 Johns. Ch. 396; Story on Agency, § 211; Murphy v. Sloan, 24 Miss. 658; 27 ib. 96. When a trustee himself becomes the purchaser of the trust estate, the *cestui que trust* may of course come into a court of chancery and set aside the sale. Adams Eq. 216; 2 Johns. Ch. 257; 5 ib. 43; 7 S. & M. 309; Hill on Trustees, 159, 233.

3. It is not the note, but the debt which constitutes the lien. The note or other evidence of the debt may be changed or removed, while the debt and the lien remain. Bradford v. Harper, 25 Ala. 340; 18 ib. 42; 10 ib. 327; 2 S. & M. 687; 5 ib. 91; 10 ib. 143; 24 Miss. 646.

4. The complainant cannot be considered as taking advantage of the wrong of his predecessors, nor can he be considered as barred or estopped by their acquiescence, for the reason that he does not represent them, but the interests of the children of the township. 34 Miss. 87; 1 S. & M. 236; Miller v. Helm, 2 ib. 687; 24 Miss. 80.

5. The bankruptcy of the debtor or purchaser does not affect complainant's rights. The lien may be enforced in the state courts, and the assignee or purchaser gets only the right of the bankrupt. Russell v.

Cheatham, 8 S. & M. 703 ; Talbot v. Milton, 9 ib. 703 ; Anderson v. Miller, 7 ib. 590.

No brief on file for defendants in error.

SIMRALL, J. :

The trustees of township 20, range 14, east, in Oktibbeha county, brought a bill in chancery against the defendants, to foreclose the lien reserved by statute, to secure the purchase money from the lessee of the 16th section.

The bill alleges that the 16th section was, on the 16th December, 1845, leased in conformity to law, for the term of ninety-nine years, to Stephen Burt, on a credit, for the price of $1,180.62, who executed his notes with personal security. Stephen Burt afterwards assigned the lease to one Leatherwood, who assigned to Paramore, who, before any part of the purchase money had been paid, assigned to the defendant, William H. Ellis.

Ellis, on the 4th of January, 1860, then being a member of the board of school trustees for the township, applied to the board, and procured to be executed a deed conveying the section to himself, for the consideration of $1,188.62, the sum for which it was originally leased. The purchase money was not in fact paid by Ellis at that time nor since, except installments of interest indorsed upon the note.

The complainants insist that the trustees could not lawfully make the deed of lease until the purchase money was paid; that the transaction made with defendant, W. H. Ellis, one of their members, was in fraud of the rights of the beneficiaries of the school lands, under the acts of congress making the donation, and they claim that the land is still subject to the lien for the purchase money.

It is further alleged, that W. H. Ellis is insolvent,

and so are his sureties on his note; that whilst so insolvent, and pressed with suits by his creditors, largely indebted to several persons, as well as complainants, he made a fraudulent conveyance of the 16th section for the use and benefit of his wife, pretended to be in payment of a debt of several thousand dollars to her, which debt is simulated and not meritorious. This deed is claimed to be an obstruction in the way of the realization of their debt out of the land, and it ought to be set aside and canceled.

W. H. and Martha Ellis demurred to the bill for several reasons: 1. Want of equity; 2. Want of jurisdiction; 3. Complainants seek to take advantage of their own wrong; 4. If the lien ever existed, it has ceased and ended; 5. Ellis has become bankrupt, and the jurisdiction to enforce the lien, if it exist, is in bankrupt court.

The lease to Burt, in 1845, was under authority of the statute of February 17, 1833 (Hutch. Code, p. 213), the lessee being required to give his four notes or bonds, with personal security for the annual payments. "And said bonds or notes, with the interest accruing thereon, shall operate as a special lien or mortgage on the lands so leased, until final payment is made," and not before final payment shall the trustees convey the title, use, etc., of the said sections, or any part thereof, to the lessees for and during and until the full end of ninety-nine years." Such is the statute.

In 1860, the trustees conveyed to W. H. Ellis, who acquired right by *mesne* assignment from Burt, before, as the bill alleges, payment had been made.

The first act of congress, reserving the 16th section for the use of schools, applicable in this state, is that of the 3d of March, 1803, which, in the language of the act, are "reserved in each township for the support of schools therein." Interpreting the scope and extent of the policy thus declared, if, indeed, the plain words

themselves are not their own interpreter, it was said, in Bishop v. McDonald, 27 Miss., the grant was for "the benefit of those who were to be educated in the township." The trustees were empowered by the legislature to lease the lands upon terms distinctly defined, in order to raise a fund to give practical and beneficial effect to the grant. And in order that as little as possible should be left to discretion, as to the character and strength of the security, and to avoid, as far as the utmost prudence could suggest, the hazard of loss by insolvency, the trustees are directed to take "such security as they may approve," and the law raises "a lien and special mortgage on the land until full and final payment;" and not until payment shall they make conveyance.

In the early cases of Connell v. Woodward, 5 How. 665, and Carmichael v. Trustees, 3 How. 84, it was said that these trustees were a *quasi* corporation, representing as such the interests of the *cestui que trust*, acting under the law for the beneficiaries, and therefore the whole body could deal and contract with a single member, and could maintain a suit at law against him. It is no less a rule of law than the suggestion of natural justice, that an agent or trustee, holding a confidential relation to his principal or beneficiary, whether deriving his relation under the law or by appointment of an individual, should conduct the business intrusted to him with fidelity, to the interest of him or those for whom he acts; but also that he shall follow the line of duty prescribed to him. If the appointing power has defined rules to govern his acts, he has no discretion.

The law declares that there shall be a "lien or mortgage" on the land until full payment. It would hardly be maintained that the trustees could dispense with this security in the lease, or that at any time they could discharge it before the debt was paid. The

answer is, they have no discretion, but are executing a statutory trust for the benefit of the most helpless and dependent in the community—the uneducated youth. If, however, they convey to one of themselves before payment of the purchase money, then it is plain that they have combined and confederated to violate the trust, and there is no pretense to say that such vendee can set up the illegal act of the board in which he participated as the means by which the property is freed from liability, to produce the money which substantially belongs to those in the township who are to be educated. An unfaithful trustee has never been allowed in a court of equity to take any advantage of his *cestui que trust* by pleading a violation of his fiduciary duty.

Such defenses in other forms have been often attempted, but without success. The class of cases in our books, nearest in analogy to this, are those arising under tacit mortgages attaching to property sold by administrators, executors and guardians. In Elliott v. Connell, 5 S. & M. 106, it was insisted that the lien did not exist upon the land, because Connell, the administrator, had taken a note in lieu of the original, which expressed the consideration to be for "money loaned;" he thereby had treated the original debt as collected, and continued the money with the debtor as on loan. To that, the court responded that the heirs are the real parties to the transaction; they are the mortgagees, and any change in the contract which would in effect discharge the lien without their consent, would operate a fraud upon their rights. In Hoggatt v. Wade, 10 S. & M. 143, it is quite distinctly intimated that nothing but payment will discharge the lien.

The case of Murphy v. Sloan, 24 Miss. 660, affords a most instructive application of the principle which holds the fiduciary to strict fidelity, and denies to him

any advantages or profits which he has made because of that situation.    W. H. Ellis knew that the law forbid the trustees to convey, so long as the debt was unpaid, and that the statutory lien and mortgage subsisted until that was done.    In accepting the conveyance, therefore, he took a property which, in reality, belonged to the inhabitants of the township for the support of schools therein, and of which they were the beneficial mortgagees, and of which security they could not be deprived except upon the terms of payment. In principle, it is like the case of Leatherman v. Prosser, 4 How. 237, where assignment was made of a chose in action, which was assets of an estate; the assignee who took the note from the administrator, in a transaction for his personal benefit, was held not to divest the title of the estate.    Although the administrator may indorse and transfer such paper for a legitimate consideration, beneficial to the estate, yet, if the assignee knows that the use and appropriation of the note is illegal, he cannot hold him.

The lien and "special mortgage" springs up by operation of law upon the lease.    The usees and real parties in interest are the inhabitants of the township. The trustees have only a naked statutory power, without interest, except as residents of the township in common with others.    They have no power to lease without lien or special mortgage resulting; they cannot displace or discharge it without payment; nor does the statutory fact arise upon which they can convey the use, etc., for the term, until "full and final payment of the money."

*A fortiori* can they not discharge the lien and execute a deed to one of themselves, who thereby participate in the breach of trust and a palpable evasion of the law.    We are of the opinion, therefore, that the deed made by the trustees to Wm. H. Ellis, in 1860, did not discharge the land from the lien for the

purchase money, nor could the trustees, by changing the form of the indebtedness, embarrass the remedy. The statutory lien adheres to the land, although it may be assigned and conveyed to a stranger, and that to the same extent and with the same virtue as if a regular mortgage had been executed and recorded. The purchaser from the lessee cannot set up the want of notice; he is as much bound as if there had been a recorded mortgage. The thing which the statute intended to protect was the debt for the purchase money, however the form of it might be changed.

It is a wise and salutary principle to hold trustees to a strict account in the management of property committed to them, and, that they may be delivered from temptation to make gain or profit to themselves, they may be compelled to account for extra profits. If they sell trust property for a valuable consideration, the purchaser holds as trustee charged with the burden of the trust. If the sale involves a breach of trust, the *cestui que trust* may follow the property in the hands of the purchaser and establish the trust against it, unless it be a secret trust like the vendor's lien undisclosed, and of which the purchaser had no notice, and he has parted with value for the property.

If the trust funds have been invested in other property, the *cestui que trust* has his election to take the property, or to hold the trustee liable for breach of his trust. 1 Story Eq. Jur., §§ 533, 534; 4 Kent Com. 307. These principles forbid that W. H. Ellis should hold the land relieved of the charge upon it.

The bankruptcy of Ellis has no effect on this controversy to interfere with the jurisdiction of the state court. A sufficient response to that suggestion is, that the lands constituted no part of the estate of the bankrupt to be surrendered to the assignee, having been previously conveyed for the use of his wife, as it purports in the deed, for a valuable consideration.

The creditors of Ellis, or his assignee in bankruptcy, might assail in the bankrupt court this conveyance as fraudulent as to them, and have the property administered for their benefit. But the proposition made in the demurrer is, that the grantor and grantee may impeach the jurisdiction of the state court, not because the grantor could vacate the deed for fraud, but because other parties might perhaps do so in the bankrupt court, if they choose to bring the suit.

Ellis himself is concluded by his deed; no court, would lend him aid to set it aside. So far as he is concerned, his entire title has passed by his deed to the use of his wife. *Prima facie* this land constituted no part of the estate of the bankrupt. There would be an undoubted jurisdiction in the bankrupt court to subject it to the debts of Ellis, on the ground (if established) that it had been conveyed away by Ellis in fraud of creditors. But the bankrupt court would respect and give full effect to prior liens and incumbrances, and would only appropriate to general creditors the residue after satisfying such liens and incumbrances. If a suit is brought in the state court by the lien creditor, the assignee — if there were a surplus, or was likely to be — might apply to bankrupt court for injunction to stay the creditor in the state court, and bring the entire subject into adjudication in the district court sitting in bankruptcy, in order to marshal the assets and first satisfy the incumbrance, and then take the residue for distribution among creditors at large; for it is only the surplus which the assignee would have interest in. Or the assignee, if he so elects, could let the suit go to judgment in the state court, and there, by decree, have the residue paid over to himself. Russell v. Cheatham, 8 S. & M. 708.

But the conclusion to which which we have arrived, as already stated, is, that the lien in security of the township debt subsists upon the land until the pur-

chase money has been paid. This special mortgage followed the property, unaffected by W. H. Ellis' conveyance for the use of his wife. In legal effect, that conveyance operated only to assign W. H. Ellis' interest in the lease, subject to the special mortgage. We do not consider the title of Ellis improved or strengthened by the conveyance which he received in 1860, and the form of his obligation for the money. Whether, therefore, the complainants shall prove their allegations of fraudulent intent, in respect to that conveyance, or not, they would, if the other allegations of the bill are made good, be entitled to relief. We do not mean, however, to recommend to complainants to forego proof on that subject, but to sustain their bill in all respects, as thereby a court of equity would be relieved of seeming to impose a harsh decree on Mrs. Ellis.

Further, it is assigned as cause of demurrer, that the complainants should not be permitted to "take advantage of their own wrong." That is to say, that having so dealt with the fund, as to discharge the lien, they are bound by the act. The same objection was pressed in Vernon v. Board of Police of Tippah County, 47 Miss. There it was urged, that although the board may have exceeded its authority in surrendering a mortgage ample to secure the debt to the school fund, yet they or their successors were bound by the act. Whilst the beneficiaries might successfully sue, the board could not. But we were then of the opinion that a succeeding board, for all substantial purposes, represented all persons in interest, and relief to them in effect inured to the beneficiaries. Such is our opinion now. The complainants substantially bring before the court the inhabitants of the township, and any redress that can be afforded accrues to them. The principle invoked applies where individuals seek redress and relief from their own fraudulent and illegal acts which may impose a loss or injury upon themselves person-

ally; but has no application to agents and trustees in respect to their dealings with trust property and funds.

The decree of the chancellor, sustaining the demurrer and dismissing the bill, is reversed, judgment here overruling the demurrer, and cause remanded with leave to defendants to answer in forty days from this date.