Catharine Eustice et al. vs. Rebecca B. Holmes et al.

1. Trust Fund: *Diversion. Case in judgment.*
C. borrowed from Mrs. H. $20,000, funds belonging to her ward and daughter, and executed a deed in trust upon a plantation to secure its payment. Afterwards C. and Mrs. H. adjusted the debt, by which C. conveyed to Mrs. H. the

place and she surrendered his notes, and gave in addition her two notes of $5,000 each, secured by a vendor's lien. The complainants, heirs of C., filed their bill to forclose this lien, whereupon M., the only surviving heir of the ward, interposed his claim, setting forth the fact that the $20,000 loaned by Mrs. H. to C. was a trust fund belonging to his wife, the ward of Mrs. H., that said debt had never been extinguished, and that his claim was a superior equity, as against the land, to the vendor's lien set up by the heirs of C. *Held,* that the transaction between Mrs. H. and C., by which the latter's notes were surrendered and conveyance of the land made to Mrs. H., was a diversion of a trust fund to the injury of the ward, in which C. participated, and does not operate to extinguish the debt; and a court of equity will treat it and the security as still subsisting and continuing for the benefit of the *cestui que trust* and those claiming under her.

2. NON-JOINDER OF PARTIES.

Objections for non-joinder will be considered waived unless urged before final hearing, unless the interest of the person not before the court be so complicated with the subject of the suit that justice cannot be done between the parties before the court.

APPEAL from the Chancery Court of *Issaquena* County.

Hon. E. STAFFORD, Chancellor.

The facts in this case are very fully and sufficiently set out in the opinion of the court.

SIMRALL, C. J., delivered the opinion of the court.

The complainants, claiming to be the holders of the two promissory notes of Holmes and wife, by indorsement from their father, Henry Chotard, filed their bill against Holmes and wife and James A. Moore, to foreclose the lien retained in the deed executed to Henry Chotard by Mrs. Holmes and her daughter, conveying to them the Riverside plantation in Issaquena county. It is disclosed that Chotard was indebted to Mrs. Ryan, who afterwards married Dr. Holmes, about $20,000, being the balance of the principal and interest of a loan made to him by Mrs. Ryan. In order to pay this indebtedness it was agreed that Chotard should convey the Riverside plantation to Mrs. Holmes and her daughter by her first marriage, Mrs. Holmes to release the indebtedness of $20,000 and surrender the promissory notes by which it was evidenced, and that she and her husband should execute their two notes to Chotard for $5,000 each. Chotard indorsed and delivered these two

notes to the complainants, his daughters, who make them and the lien reserved in the deed the foundation of their equity.

Robert Ryan, the first husband of Mrs. Holmes, and father of Margaret, who afterwards married James A. Moore, by his last will bequeathed to his daughter a pecuniary legacy of $40,000, to be loaned on real estate to be valued on oath at double the amount of the loan.   The daughter was to be maintained out of the interest, etc.   Mrs. Ryan and William Ryan were appointed testamentary guardians.   William Ryan died shortly thereafter, and Mrs. Ryan acted alone.

Margaret Ryan married Moore in 1865, and died, leaving an infant of a few months old surviving her.   The child died, whereby James A. Moore succeeded to all the interest of his wife and child, under the will of Robert Ryan.

The controversy between the complainants and Moore is embraced substantially in these propositions :   On the part of the complainants, that they are the indorsees and holders of the two notes of Holmes and wife, secured on the Riverside plantation, and that the lien reserved in the deed of Henry Chotard should be enforced as a security for their benefit.   Moore, on his part, claims that the loan of $20,000 made by Mrs. Ryan to Henry Chotard, and protected by his deed in trust on the plantation, was part and parcel of the $40,000 legacy to Margaret Ryan, which Mrs. Ryan loaned as directed by the will, and that Chotard had notice of the character of the fund at the time he borrowed ; if not then, he had such knowledge when he accepted the surrender of his notes and made the conveyance to her and her daughter.   That because of such notice the transaction between Chotard and Holmes and wife, last referred to, was not binding upon Margaret—did not in equity displace and satisfy the security which Chotard had given when he borrowed the money—but that the debt and security therefor still subsists, and may be made available by the surviving husband, who has succeeded to her rights through his child, who for a little while survived its mother.

These litigants are not so much at issue on the law which applies to and governs the case as about the facts.

The complainants insist that Chotard was not aware that he was borrowing the ward's money, nor did he know that such was the character of his debt when he took up his notes by the sale and conveyance to Mrs. Holmes, for herself and daughter, in 1866, (February 17).

But if the truth be as claimed by Moore, they further insist that he has ratified and confirmed the transaction, so that he is put under an equitable estoppel to controvert or disturb it.

It is thus perceived that, when the merits of the case are sifted out of the voluminous pleadings and evidence, they are few, nor is there serious difficulty in the principles of equity that must apply to them.  If it was known to Maj. Chotard when he borrowed the money from Mrs. Ryan (now Mrs. Holmes) that she was making an investment of her ward's funds, or if he had that information when the settlement was made with her in ——, then he appears in the attitude of accepting from her as much as $20,000 of the trust funds, or about that sum, as part of the consideration for which he sold and conveyed the plantation ; he participates in, and receives a benefit from, this diversion of what may be called a trust fund, and if that results in injury to the beneficiary the transaction cannot stand.  Tatum v. McLelland, 50 Miss., 2 ; Jackson v. Van Dalpson, 5 Johns., 46 ; Pressly, sup't, v. Ellis et al., 48 Miss., 582 ; 1 Story's Eq. Jur., §§ 533, 534 ; 4 Kent's Com., 307.  A court of equity would not permit the satisfaction of the security to stand if Chotard coöperated with Holmes and wife in the application of the ward's means to the purchase of the property, but would treat the debt and security for the benefit of the *cestui que trust*, or any one succeeding to her rights, as still continuing upon the property.  Counsel do not deny that, wherever the rights of a party repose upon that principle, a court of equity may give it such practical application and force as to accomplish complete justice.

On the issue of fact, whether Chotard knew of the trust nature of the fund with which Mrs. Holmes was dealing, we think the chancery court did not err in concluding that he had such knowledge.

Dr. Duncan, who made the loan for Mrs. Holmes, was fully acquainted with all the circumstances ; Mrs. Holmes had made full explanations to him. He is described as the party of the third part in the deed of trust, acting as agent. The notes are payable to Henry Chotard's own order, and were by him indorsed in blank. Several interviews took place, before all the notes matured, between Chotard and Mr. and Mrs. Holmes in relation to their payment. The notes were placed in Martin's hands for collection, as trust notes, and he, as attorney, had frequent interviews with Chotard about the debt and its payment.

The conditional part of the deed in trust obligates the debtor to make payment to Dr. Duncan, his executors, administrators, etc. This paper shows that Duncan was not acting *sui juris*, but as "agent." Besides all these circumstances, it is distinctly proved by Dr. Holmes that Chotard had such notice in 1862.

Has James A. Moore ratified the transaction between Chotard and Mrs. Holmes in diverting the funds of the ward in the purchase of the plantation? This is claimed to have been shown, both by his declarations and acts. Much oral and written communication passed from Moore to the Chotards, and to Gen. Martin, their attorney, in reference to this business. Most of his letters expressed anxiety about it, and a disposition to make terms. One or more offers were made.

But these verbal acts are too loose, uncertain, and inconsistent of themselves to amount to an equitable estoppel. The acts relied upon are his taking possession of the plantation under claim of right, and exercising the ordinary acts of ownership. When these acts are closely inquired into they show that he went on the plantation in 1867, rented the land and collected

the rents; but this was done at the instance of Mrs. Holmes, so that he might be reimbursed some money which he had advanced for taxes; when that was done, he did not further interfere with the property. His possession was for Mrs. Holmes, and all that was done was by her request, for a specific purpose.

The rents for the year 1868 were collected by Dr. Holmes, although Moore may have made contracts with some of the tenants. A case of ratification was not made out.

It is averred in the amended and supplemental bill that Moore, after the death of his wife, by deed, conveyed or released and quit-claimed all of his right and interest in the Riverside plantation to Mrs. Holmes, and therefore he has no right to interpose objections to the foreclosure of the lien asserted by the complainants.

Moore responds to that that he did sign and seal the deed at the suggestion of Dr. Holmes; that if such a paper was left with him he might, at a propitious moment, find Mrs. Holmes disposed to make a settlement with him, on account of her guardianship of his wife, on condition that such deed was made to her; that the deed was to be held by Dr. Holmes as an escrow, not to be delivered until, and except upon condition of, a settlement made. The testimony in support of Moore's answer is conclusive. No settlement was ever made, nor was the deed ever offered to, or accepted by, Mrs. Holmes.

The witnesses give clear and satisfactory explanations on this point, and prove that the deed never became operative for any purpose whatever.

The chancellor framed his decree on the idea that Moore had not, by reason of the transaction between Chotard and Holmes and wife, lost the investment of his wife's means on the security of the Riverside plantation, but that the debt and security still remained, if he chose to assert it; that the purchase by Mrs. Holmes, with the reservation of a lien for the $10,000 represented by the two notes of her husband and

herself, was in reality a purchase of the equity of redemption, and was subordinate to the prior equity of Moore, by reason of the fifteen notes of Chotard and the deed of trust therefor.

The decree meets the substantial rights and equities of the case, and should stand, unless to uphold it would violate some rule or principle. The most serious obstacle seems to be that Baker, the trustee, was not made a party. It did not occur to the complainants that he was a proper party. The defendant Moore presented his claims upon the property and asserted that they were superior to those set up by the complainants. The complainants met these pretensions with an answer, and attempted to meet their force by counter-allegations and the preferment of new matter. Once or more the pleadings were amended by the complainants so as to present, in a distinct form, the grounds and reasons which should invalidate the defendant's rights as asserted in his cross-bill.

The complainants and Moore contested with each other upon the merits. Each side seems to have adduced all the testimony that could be found. The complainants endeavored to establish their lien and to defeat the pretensions set up by Moore.

It is barely possible that something cumulative might be presented in another litigation which might help 'out the one party or the other.

It is hardly probable, however, that the case as made by this record would be varied. No valid good could be attained by making the personal representative of Henry Chotard a party—if indeed there be one—for he died utterly insolvent.

Baker, the trustee, has no beneficial interest in the property, and is indifferent which party may satisfy his debt out of it. The correct practice is that objection should be promptly made for the non-joinder of parties, complainants or defendants. If it appears on the face of the bill, the exception may be taken by demurrer. It may be presented in proper cases by plea or answer. But if the defendants propose to take advantage of it they ought regularly, in some form of pleadings, to bring it to the notice of the court and of the opposite

party; otherwise, it will be considered as waived so far as to leave the court at liberty to make a decree between the parties actually before it, if it can be done without compromising the rights of the absent party. Such objections come too late at the final hearing "if the court can make a decree which will do entire justice to all the parties." 1 Story's Eq. Pl., § 237. It was held in Whiting v. Bank of United States, 13 Pet., 614, that unless the non-joinder operated a prejudice to the rights of the other defendants it could not be taken advantage of at the hearing; and why should it? If silence is maintained until the proofs have been taken, and the cause is ripe for hearing between the parties litigant, why should one of them be allowed to interpose in arrest of the decree because some other person, not before the court, has some interest in the subject-matter. If that interest be so complicated with the subject of the suit as that justice cannot be done in the absence of such person, the court may dismiss the bill without prejudice, or may retain it for amendment to bring in the party. Story's Eq. Pl., § 336. If the objection were not made at the hearing it would only be in extreme cases, to advance justice and preserve the rights of parties, that it should prevail on appeal.

It is agreed by counsel that Baker, the trustee, was a necessary party in any proceeding reëstablishing Chotard's debt and the security therefor, and since Baker was not a party complainant or defendant to the original bill, he could not be made a party to the cross-bill. That objection, if taken by demurrer to the cross-bill, would have prevailed, and would have forced Moore to have asserted his rights by an original bill. But the complainants in the original bill, defendants in the cross-bill, answer it upon the merits, and set forth the sundry reasons why Moore's claim is invalid, and no relief should be granted him. After Moore had answered the original bill the complainants made one, perhaps two, amendments of their pleadings, setting forth new grounds why the claim was invalid and should not be enforced. Voluminous

testimony was taken in support and in contravention of Moore's claim, and the question involved at the final hearing was whether he had sustained it or not.

It was a matter of no concern to Baker whether the property was devoted to pay the debt to the complainants or to Moore. He would neither be benefited nor injured by the decree.

The objection of want of parties comes too late. Justice to the parties who are really interested is done by the decree. It is affirmed.

On application for a reargument of the case, SIMRALL, C. J., delivered the following opinion:

A reargument is asked upon the ground, mainly, that relief could not be granted on the cross-bill, because certain persons were not made parties thereto, and could not be, because not parties complainants or defendants to the original suit. In the opinion we said, in effect, that if the appellants had demurred to the cross-bill for that reason, it would have resulted in its dismissal and have compelled Moore to have brought an original suit. But no exception was taken in the chancery court, nor upon final hearing, as it appears, and therefore ought not to prevail on appeal if a decree concluding and settling the rights of parties before the court could be made without prejudice to absent persons. In reviewing the decision on this point we are satisfied that our views are supported, and are reasonable and just.

In the case of Walker v. Brungard, 13 S. & M., 751, which was an appeal from that able and learned equity judge, Chancellor BUCKNER, his opinion is given in full, and was affirmed by the court.

In it occurs this passage : " The cross-bill  *  *  * introduced new and different parties, with distinct and independent matters. Had this been excepted to by demurrer, plea, *or claim to object to the same on final hearing*, I should have been disposed to keep out of consideration  *  *  * all

matters which relate to the claims of Salmon and Mrs. Brungard, her agents and trustees, but, as the whole cross-bill is answered in detail,  *  *  it is my duty to decide the whole case."  See, also, Bishop v. Miller, 48 Miss., 370, 371.

After the chancellor had announced his decree in favor of appellee the appellants petitioned for a rehearing, upon the ground that more testimony could be obtained tending to show confirmatory acts by Moore, and also that his deed to the plantation was valid.

These matters go to the very merits of this litigation. There is not the slightest intimation that the above objections were interposed as a reason why the decree should not pass.

2. We do not understand that the decree is obnoxious to the objection that it is personal against the appellants. It conforms to the usual practice and precedents.  If the sum found due to Moore on the notes of Chotard is not paid by the appellants, within the time named, then the land shall be sold.  So, if Holmes and wife do not pay to the appellants what is due for principal and interest, then, in default of such payment, a sale shall be made.  The decree then declares a preference and priority in favor of Moore, and directs that he be first paid.

3. We think that the true and salutary rule is that the prayer of general relief is as broad in a cross-bill for the purpose of redress as in the original bill, and under either such redress will be granted as the circumstances require.  If the special relief be refused, as not warranted by the facts, the court may adapt, under the general prayer, the relief to the exigencies and justice of the case.

That was done in this case, and properly done.

The reargument is denied.