## ORLANDO DAVIS *v.* MATTIE J. LUMPKIN ET AL.

1. **DEED.** *Verbal gift of land. Relation back.*
   A verbal gift of land by a father to his daughter soon after her marriage is void, although she takes possession at the time, and his subsequent conveyance, made after he becomes insolvent, will not, as against his creditors, relate back to the time of the gift.

2. **SAME.** *Delivery. Retention by grantor. Intention.*
   A paper, in the form of a deed of gift, executed at the time of the donation, is ineffectual for want of delivery, although signed and sealed by the donor and his wife, if retained by him, and treated by all the parties as a memorandum from which a deed was afterwards to be drawn.

3. **FRAUDULENT CONVEYANCE.** *Prior creditors. Judgment lien.*
   If the father, after he becomes insolvent, makes a voluntary convey-

ance to his daughter, it is void as against existing creditors, and the land conveyed is subject to their judgments subsequently obtained against the grantor.

4. JUDGMENT LIEN. *Bankruptcy of debtor. Execution.*

Neither the bankruptcy and discharge of the judgment debtor, nor the appointment of an assignee and the assignment to him, affect the lien on the land of the judgment in the State court, or hinder its enforcement by execution.

5. SAME. *Jurisdiction of Federal and State courts. Assignee's rights.*

The assignee has the right to take the matter into the Bankruptcy Court, but if the judgment calls for more than the land is worth, and he declines to assert his right, the State courts may proceed to enforce the lien, without invading the jurisdiction of the Federal courts, or contravening the bankrupt law.

6. CREDITOR'S BILL. *Federal and State courts. Limitation against assignee.*

If the assignee in bankruptcy, when summoned, fails to appear in the State court, where the judgment creditor's bill is pending, or to take any other step for two years after the assignment to him, he is barred by the limitation of the Bankrupt Act, but the judgment creditor is not, and the State court will subject the land.

7. SAME. *Jurisdiction. Statute passed pending suit.*

Sect. 711 of the Revised Statutes of the United States, which provides that the jurisdiction of the Federal courts shall be exclusive of the courts of the several States as to all matters and proceedings in bankruptcy, does not affect the creditor's bill filed in the State court before the Revised Statutes were adopted. U. S. Rev. Stats. § 5597.

8. SAME. *Chancery practice. Marshalling assets.*

While a prior grantee can compel the judgment creditor to first sell land, subsequently conveyed by the debtor, and equally subject to the lien, he cannot do so if the latter land has been levied on under prior judgments, and is so involved in litigation that it presents no source even of partial satisfaction.

9. CHANCERY PRACTICE. *Pleading. Answer. Denial of statement in bill.*

If the answer to a bill which charges that judgments are paid, refers to the respondent's denial in another case in the same court, that, in the absence of exception, is not, by virtue of Code 1871, § 1024, to be taken at the hearing as an admission of payment.

APPEAL from the Chancery Court of Tippah County.

Hon. A. B. FLY, Chancellor.

Harrison P. Maxwell, who was in March, 1859, the owner of much valuable land, including the tract in controversy, and considered wealthy, was unable to pay a large judgment against him, and borrowed the money from Orlando Davis,

to whom he gave his promissory note, which was renewed from time to time, adding the accrued interest. Davis sued on the last note, given on Oct. 4, 1861, and recovered a judgment against Maxwell, on Sept. 8, 1866, for over four thousand dollars. Mattie J. Maxwell, the daughter of Harrison P. Maxwell, was married to Olin H. Lumpkin, and soon afterwards, in June, 1862, her father, by way of advancement, informed her that he gave her the land in controversy. She and her husband erected some cabins thereon, and located slaves there. At the same time, her father told her that he had made a memorandum of the gift, and would on the first opportunity have it drawn up in proper form. The memorandum, which was in the form of a deed of gift, signed and sealed by her father and mother, was locked up by the father in his desk, where it remained until August, 1870, when he delivered it to one of the solicitors for use in this suit.

At the close of the civil war, Mr. Maxwell was insolvent, and was pressed by his creditors. On April 17, 1866, he executed to his daughter a deed of gift of the land in controversy, which was properly acknowledged, recorded and delivered. Seven days afterwards, he conveyed his entire estate, real and personal, to John A. Moorman, as trustee for his wife; stating as the consideration that he owed her over twenty thousand dollars for money, slaves, choses in action and other personal property, which she received after her marriage. Executions, under four other judgments, which Davis held against him, were then levied upon the land conveyed to his wife. On Dec. 7, 1868, Maxwell was, upon his own petition, adjudicated a bankrupt, and on Oct. 21, 1869, the register assigned his estate to Lafayette Rogan, who had been appointed assignee on the previous day. When Maxwell applied for his discharge, the creditors who had proved their claims, opposed it on the ground of the two conveyances, but the Bankruptcy Court held that, as they were made before the passage of the bankrupt act, they constituted no ground of objection, and on June 14, 1870, granted the discharge, but directed the assignee to file a bill in that court against the grantees in the deeds, to test their validity. The assignee took no further steps, and has not reported

or been discharged. An execution, under the judgment of Sept. 8, 1866, was, on May 15, 1869, levied upon the land which Maxwell had conveyed to his daughter.

Two bills in chancery were filed against Orlando Davis on July 5, 1869, — one by Mrs. Maxwell, to enjoin the sale of the lands conveyed to her, under the executions levied thereon, upon the allegation, among others, that the judgments had been paid; and the other, the original bill in the case at bar, by Mr. and Mrs. Lumpkin, to enjoin the sale of the land in controversy, under the judgment for four thousand dollars, and also to enjoin the four other judgments on the same allegations as those in the former bill. These bills were not sworn to, but as the acts of February, 1867 (Acts 1867, pp. 225, 425), were in force, the injunctions were granted by the Probate Judge as therein authorized. The latter bill alleged a verbal gift of the land in 1862, followed by the deed of 1866. In his answer and cross-bill thereto, Davis pleaded the Statute of Frauds, and, as to the allegation that the four other judgments were paid, referred to his answer to the former bill, in the case of *Maxwell* v. *Davis* pending in the same court, which specifically denied the payments; and on the ground of Maxwell's insolvency, when he made the deed of gift, which was alleged to be part of a general scheme to defraud his creditors, the cross-bill prayed that such deed be declared void as against the lien of Davis's judgment. Mrs. Lumpkin, in her answer to this cross-bill, filed Aug. 29, 1870, set up her father's bankruptcy in bar of the relief asked, and also produced and filed as an exhibit the "memorandum," under which she alleged that she had held title since its date, June 12, 1862, at which time her father was solvent. Her husband's answer was the same. On Aug. 11, 1875, Mrs. Lumpkin and her husband filed an amended bill, alleging that the memorandum was a deed duly delivered to her, and held for her by her father; that owing to the confusion of the civil war it was not recorded, and was supposed by every one to be lost; that, under that idea, the second deed was executed, which, by relation back made the first deed valid; and that, after the original bill was filed, the first deed was found. The amended bill also set up the large amount of other prop-

erty owned by Maxwell, and claimed that, as her deed was prior in date to her mother's, Davis should exhaust the land conveyed to her mother before hers; and, exhibiting the entire record of the bankruptcy proceedings, it made Rogan, the assignee, a party defendant; and pleading the Statute of Limitations of two years against him, and alleging that the statute barred Davis also, prayed for a perpetual injunction against both.  The assignee was summoned, but failed to appear, and a *pro confesso* was entered against him. Davis filed an answer and cross-bill, in which he denied the delivery of the memorandum, and the father's holding it as agent; denied that the second deed related back, and that the bankruptcy proceedings affected his lien or cut off his right to levy execution.  He alleged that all the land was insufficient to pay his five judgments; that four had been levied on that conveyed to the mother, who was now contesting the matter with him and other creditors in another suit; set up his five liens against Maxwell, his donee and his assignee in bankruptcy; and averred that the injunction, by preventing him from proceeding, stopped the running of the Statute of Limitations.  The answer and cross-bill admitted the assignee's right to draw the matter into the Bankruptcy Court, but averred that, as the land was insufficient to pay Davis's judgment liens, Rogan abandoned that course, and was precluded from now adopting it; but, making him a party, asked that the deed and memorandum be declared void, and the judgment liens enforced.  An answer to this cross-bill was filed by Mr. and Mrs Lumpkin, and *pro confesso* was taken against the assignee, after due service of process.  From a final decree on all the evidence, perpetuating the injunction and dismissing Davis's cross-bills, he appealed.

*E. S. Hammond* and *Orlando Davis*, for the appellant.

I. A judgment creditor may proceed in the State courts, after the bankruptcy of the judgment debtor, to enforce the lien of his judgment against the property of the bankrupt, fraudulently conveyed by deed of gift, by levying his execution and filing a bill in equity, in aid thereof, against the fraudulent donees, to set aside the conveyance.

1. Bills of the character of the cross-bills of Davis in this case afford ancillary aid, to give efficacy to the legal remedy, and may be filed either before or after the execution sale. *Vasser v. Henderson*, 40 Miss. 519; *Allen* v. *Montgomery*, 48 Miss. 101; *Partee* v. *Mathews*, 53 Miss. 140; *Fleming* v. *Grafton*, 54 Miss. 79; *Jones* v. *Green*, 1 Wall. 330. This remedy should not be confounded with the ordinary creditor's bill based on a judgment and return of *nulla bona*, like the cases of *Farned* v. *Harris*, 11 S. & M. 366, and *Brown* v. *Bank of Mississippi*, 31 Miss. 454. The appellant stands simply upon his liens, all older than Maxwell's bankruptcy, and seeks the aid of equity to make his legal remedy effective; and his bill is supported, as to jurisdiction, by being grafted upon the original suit at law, as auxiliary thereto and part thereof. *Hatch* v. *Dorr*, 4 McLean, 112. The principle will be found illustrated and enforced in many cases in the Supreme Court of the United States. *Dunlap* v. *Stetson*, 4 Mason, 349; *Dunn* v. *Clarke*, 8 Peters, 1; *Gwin* v. *Breedlove*, 2 How. 29; *Freeman* v. *Howe*, 24 How. 450; *Railroad Co.* v. *Chamberlain*, 6 Wall. 748; *Bank* v. *Turnbull*, 16 Wall. 190.

2. The proposition of the appellees, that, by virtue of the adjudication, the Bankruptcy Court acquired exclusive jurisdiction of all controversies relating to the bankrupt's property, has been settled against them by this court. *Russell* v. *Cheatham*, 8 S. & M. 703; *Talbert* v. *Melton*, 9 S. & M. 9; *Bush* v. *Cooper*, 26 Miss. 599; *Bruner* v. *Sherley*, 27 Miss. 407; *Allen* v. *Montgomery, ubi supra; Reed* v. *Bullington*, 49 Miss. 223; *Winters* v. *Claitor*, 54 Miss. 341. The same principle has been decided by the Supreme Court of the United States. *Eyster* v. *Gaff*, 91 U. S. 521; *Burbank* v. *Bigelow*, 92 U. S. 179; *Claflin* v. *Houseman*, 93 U. S. 130; *McHenry* v. *La Société Française*, 95 U. S. 58; *Yeatman* v. *Savings Institution*, 95 U. S. 764. And it has been so held in the State courts. *McCance* v. *Taylor*, 10 Gratt. 580; *Tichenor* v. *Allen*, 13 Gratt. 15; *Spilman* v. *Johnson*, 27 Gratt. 33; *Doremus* v. *Walker*, 8 Ala. 194; *Freeny* v. *Ware*, 9 Ala. 370; *Rugely* v. *Robinson*, 19 Ala. 404; *Crowe* v. *Reid*, 57 Ala. 281; *Sheffey* v. *Davis*, 60 Ala. 548; *Sorden* v. *Gatewood*, 1 Ind. 107.

3. It is urged, however, that the title of the assignee in bankruptcy is absolute in such a sense that no litigation can proceed in any court in relation to the property of a bankrupt, except in the assignee's name, and especially where the property has been conveyed by the bankrupt in fraud of creditors. The distinction between property conveyed by the bankrupt in fraud of his creditors, and his other property, is based on the clause of the bankrupt law of 1867, not in that of 1841, the third section whereof vested in the assignee all the bankrupt's property, but was silent as to that fraudulently conveyed. 5 Stats. at Large, 442, 443. Under that act, our courts held that the assignee could not maintain a bill to vacate such a conveyance made before the law was passed. *Porter* v. *Duglass*, 27 Miss. 379 ; *Abbey* v. *Commercial Bank*, 34 Miss. 571. Doubtless to meet that difficulty, the Bankrupt Act of 1867, § 14, after enumerating the other property which vests in the assignee, adds, " and all the property conveyed by the bankrupt in fraud of his creditors." The assignee's title to such property is, under the act of 1867, the same as his title to the rest of the bankrupt's estate. That title is not to the whole estate, such as heirs and executors take, but only to the estate in which the bankrupt has the beneficial, as well as the legal interest. James on Bank. 36 ; *Ontario Bank* v. *Mumford*, 2 Barb. Ch. 596. The assignee takes the property and rights of property of the bankrupt, subject to all such rights and equities of third persons as attached to them in the hands of the bankrupt. *Ex parte Newhall*, 2 Story, 360 ; *Moore* v. *Jones*, 23 Vt. 739 ; *Clason* v. *Morris*, 10 Johns. 524 ; *Kip* v. *Bank of New York*, 10 Johns. 63 ; *Mitchell* v. *Winslow*, 2 Story, 630 ; *Winsor* v. *McLellan*, 2 Story, 492 ; *Palmer* v. *Thayer*, 28 Conn. 237. The title of the bankrupt passes to his assignee, subject to his creditors' liens. *Doe* v. *Childress*, 21 Wall. 642 ; *Bates* v. *Tappan*, 99 Mass. 376 ; *Bowman* v. *Harding*, 56 Maine, 559 ; *Sampson* v. *Burton*, 4 B. R. 1 ; *Leighton* v. *Kelsey*, 57 Maine, 85 ; *Perry* v. *Somerby*, 57 Maine, 552 ; *Stoddard* v. *Locke*, 43 Vt. 574 ; *Daggett* v. *Cook*, 37 Conn. 341. The assignee is not a *bona fide* purchaser for a valuable consideration. The title comes into his hands in no more perfect condition than it left the bankrupt's ; he is a volunteer

rather than a purchaser. *Tallcott* v. *Dudley*, 4 Scammon, 427. His title will not divest a legal or equitable lien, or an attachment lien. Deacon on Bank. (Eng.), 429, 646 ; Bump on Bank. 316, 326, 514, 603, 609, 628, 700, 706.

.4. Not only are the creditor's liens preserved, but likewise his remedies. He may disregard the bankruptcy in pursuing them, so long as he does not seek a personal judgment against the bankrupt. Whenever the rights of the assignee are involved, he alone must protect them. He does this, like other suitors, by appropriate action in courts of competent jurisdiction, except that he has the Bankruptcy Court added to the list of courts in which he may sue or be sued. He could have sued in any court of competent jurisdiction, State or Federal, to set aside this fraudulent conveyance. *Johnson* v. *Bishop*, 1 Woolw. 324, 329. But wherefore should he sue ? The liens would exhaust the land, and, being interested only in the surplus, he did no more than his duty in not suing, even if he were directed by the Bankruptcy Court to sue. *McHenry* v. *La Société Française*, 95 U. S. 58 ; Bump on Bank. 506, 621. By failing to sue for two years, the assignee is barred, as are all creditors claiming by, through, or under him. But the appellant, who claims adversely to the assignee, is not barred by virtue of the Bankrupt Act. His right comes from an enrolled judgment, which is a lien by virtue of the statute of Mississippi. He cannot prove his debt without waiving his lien. U. S. Rev. Stats. § 5075. The assignee cannot defeat the lien by action or non-action. At most, he can draw the matter into the Bankruptcy Court, sell the property, pay the lien creditor, and retain the surplus for general creditors. Bump on Bank. 601. The assignee and general creditors having thus relinquished by non-action to a secured creditor the assignee's interest in the property, the jurisdiction of the State courts to perfect or enforce the title thus acquired cannot be questioned. *Second National Bank* v. *National State Bank*, 10 Bush, 367 ; Bump on Bank. 621. This abandonment has likewise inured to the benefit of the fraudulent donees. Such is the effect of all Statutes of Limitations. The controversy between Davis and the donees in

this case is thus left free of all question touching the bankruptcy.

5. It is further insisted that the execution was the beginning of a new proceeding, which could not take place after bankruptcy. But, without surrendering the position that all subsequent proceedings were ancillary to the lien, the appellant insists that the execution and bill were proper after bankruptcy. In *Sorden* v. *Gatewood*, 1 Ind. 107, the right of a lien creditor to take out and levy execution after bankruptcy was sustained. The bankruptcy of a defendant in execution does not destroy the judgment lien or prevent the issue of an *alias* execution for its enforcement. *Sheffey* v. *Davis*, 60 Ala. 548. In Pennsylvania, a judgment creditor, having a lien older than the bankruptcy, was allowed to take out and levy execution after bankruptcy, and to proceed on his lien, although the assignee was a party and resisting. *Reeser* v. *Johnson*, 76 Penn. St. 313. The rule appears to be universal. *McCance* v. *Taylor*, 10 Gratt. 580; *Tichenor* v. *Allen*, 13 Gratt. 15; *Freeny* v. *Ware*, 9 Ala. 370; *Rugely* v. *Robinson*, 19 Ala. 404; *Crowe* v. *Reid*, 57 Ala. 281. In this State the decisions are to the same effect. *Russel* v. *Cheatham*, 8 S. & M. 703; *Talbert* v. *Melton*, 9 S. & M. 9; *Reed* v. *Bullington*, 49 Miss. 223. Executions have been issued in the enforcement of liens after bankruptcy, and sustained by this court. In *Bush* v. *Cooper*, 26 Miss. 599, a bill filed after bankruptcy to enforce the lien of a mortgage was sustained. In the cases of *Bruner* v. *Sherley*, 27 Miss. 407, *Allen* v. *Montgomery*, 48 Miss. 101, and *Winters* v. *Claitor*, 54 Miss. 341, the creditors failed only for want of a lien, while the court in each case fully recognized the rights of lien creditors. The Supreme Court of the United States has sustained the right of the lien creditor to issue and levy his execution after bankruptcy commenced. *Savage* v. *Best*, 3 How. 111; *Scott* v. *Kelly*, 22 Wall. 57. So of the right of a judgment creditor to file a bill after bankruptcy to enforce his lien, or to file a bill after bankruptcy to enforce a mortgage. *Burbank* v. *Bigelow*, 92 U. S. 179; *McHenry* v. *La Société Française*, 95 U. S. 58. The same is true where no execution has ever issued, no levy been made, and

the judgment creditor stands upon his lien alone.  *Mays* v. *Fritton*, 20 Wall. 414.

6. Analyzing the cases before cited from the Supreme Court of the United States, and also the following cases, counsel contended on a close inspection of them it would be seen, that where the lien exists before bankruptcy, any court, State or Federal, has jurisdiction to enforce it, without regard to the time, place or manner of the commencement of the proceedings, and without regard to the time of issuing executions, or making levies and sales.  *Ex parte Christy*, 3 How. 292 ; *Norton* v. *Boyd*, 3 How. 426 ; *Peck* v. *Jenness*, 7 How. 612 ; *Colby* v. *Ledden*, 7 How. 626 ; *Marshall* v. *Knox*, 16 Wall. 551 ; *Wilson* v. *City Bank*, 17 Wall. 473 ; *Longstreth* v. *Pennock*, 20 Wall. 575 ;  *Clark* v. *Iselin*, 21 Wall. 360 ; *Ray* v. *Norseworthy*, 23 Wall. 128 ; *Eyster* v. *Gaff*, 91 U. S. 521.

7. It is contended, that by the Revised Statutes of United States, § 711, the jurisdiction of the Bankruptcy Court is made exclusive over this controversy.  But the Revised Statutes were passed Dec. 1, 1873, and by § 5597 thereof, all accrued rights and pending suits are saved from its operation : it does not oust the State court of a suit pending therein before its passage. *Goodrich* v. *Wilson*, 119 Mass. 429 ; *Claflin* v. *Houseman*, 93 U. S. 130 ; *Kidder* v. *Horrobin*, 72 N. Y. 159.  But this is not a matter or proceeding in bankruptcy.  Neither party claims through the bankruptcy proceedings, but both parties claim adversely to the assignee, who asserts no claim against either, and has abandoned all claim against both.  *Hanson* v. *Herrick*, 100 Mass. 323 ; *Stickney* v. *Wilt*, 23 Wall. 150.  In fact, § 711 makes no change in the law.  The United States courts always had exclusive jurisdiction in bankruptcy proceedings proper, which never were or could be carried on in the State courts.  *Winters* v. *Claitor*, 54 Miss. 341.  Notwithstanding § 711, an action may be brought in a State court by an assignee to collect assets of the bankrupt, and to foreclose a mortgage.  *Wente* v. *Young*, 17 B. R. 90 ; *Burlingame* v. *Parce*, 17 B. R. 246.  Suits by the assignee against any person claiming adverse interest, are no part of the bankruptcy proceeding.  They are only in aid of such a proceeding.  *Wiswall* v. *Campbell*, 93 U. S. 347.

8. The two years' Statute of Limitations is set up against the assignee by the appellees, who contend that because it bars him it bars the appellant also. The statute (Bankrupt Act, 1867, § 2) is a copy of the eighth section of the act of 1841. The precise question presented here has been decided adversely to the position of the appellees. *Tichenor* v. *Allen*, 13 Gratt. 15; *Dewey* v. *Moyer*, 72 N. Y. 70. But the plea is a personal plea of the assignee. The appellant and the appellees stand upon equal equities, and the controversy between them is not affected by the fact that the assignee is barred. *Rawls* v. *American Ins. Co.*, 27 N. Y. 282; *Hyde* v. *Van Valkenburg*, 1 Daly (N. Y.), 416; *Tichenor* v. *Allen, ubi supra.* The same is true of bankruptcy, infancy, and usury, and all this class of defences. *Dewey* v. *Moyer, ubi supra*; *Bowman* v. *Pope*, 33 Miss. 94; *Alsworth* v. *Cordtz*, 31 Miss. 32. In *Abbey* v. *Commercial Bank*, 31 Miss. 434, this court refused to allow a fraudulent grantee to set up the Statute of Limitations, as between his grantor and a creditor who was seeking to set aside the fraudulent conveyance.

II. The memorandum of June 12, 1862, was never delivered. Neither a deed nor memorandum is a sufficient compliance with the Statute of Frauds, so long as it remains in the exclusive possession of the grantor. It was obviously not the intention of these parties that the grantor should hold this deed as agent: it was retained as a memorandum from which a deed was to be subsequently drawn. The law upon the subject of the delivery of deeds and writings has been fully laid down by this court adversely to the position of the appellees in this case. As against creditors of the grantor, a constructive delivery must be clearly proved. *Bledsoe* v. *Little*, 4 How. 13; *Kane* v. *Mackin*, 9 S. & M. 387; *Wall* v. *Wall*, 30 Miss. 91; *M' Gehee* v. *White*, 31 Miss. 41; *Bullitt* v. *Taylor*, 34 Miss. 708; *Morris* v. *Henderson*, 37 Miss. 492; *Jiggitts* v. *Jiggitts*, 40 Miss. 718; *Kearny* v. *Jeffries*, 48 Miss. 343; *Jelks* v. *Barrett*, 52 Miss. 315; *Cocks* v. *Simmons, ante*, 183. The same rules prevail in other States. *Parker* v. *Parker*, 1 Gray, 409; *Hatch* v. *Haskins*, 17 Maine, 391; *Maynard* v. *Maynard*, 10 Mass. 456; *Hawkes* v. *Pike*, 105 Mass. 560; *Cook* v. *Brown*, 34 N. H. 460; *Fisher* v. *Hall*,

41 N. Y. 416; *Folly* v. *Vantuyl*, 4 Halst. 153; *Crawford* v. *Berthholf*, 1 Saxt. 458.

III. Both the deed of April 17, 1866, and the memorandum of 1862, even admitting the latter to be valid, are on their faces voluntary conveyances. Until a recent period, such conveyances were held to be void as to existing creditors. *Young* v. *White*, 25 Miss. 146; *Bogard* v. *Gardley*, 4 S. & M. 302; *Catchings* v. *Manlove*, 39 Miss. 655. In *Wilson* v. *Kohlheim*, 46 Miss. 346, this court laid down the new rule, that a man might give to his child a reasonable part of his property if he was not largely in debt at the time; but it was held that, if he was insolvent, the gift could not stand whether made with fraudulent intent or not. It has since been held that the law presumes a voluntary conveyance to be void, and the donee must establish the facts which repel the presumption. *Pennington* v. *Seal*, 49 Miss. 518; *Cock* v. *Oakley*, 50 Miss. 628. This is in accordance with settled authority. *Richardson* v. *Rhodus*, 14 Rich. 95; *Van Cleef* v. *Fleet*, 15 Johns. 147; *Van Wyck* v. *Seward*, 18 Wend. 375; *Davis* v. *Herrick*, 37 Maine, 397; *Smith* v. *Reavis*, 7 Ired. 341; Bump Fraud. Conv. 286, 294. These principles, applied to the facts, render the two deeds void.

IV. The appellees claim in their amended bill that the deed of April 17, 1866, validates by relation the memorandum of June 12, 1862. The doctrine of relation is not favored by the courts. Chancellor Kent speaks of it as a dormant power of mysterious energy, too mischievous to be endured. 4 Kent Com. 339. It may be used to advance justice, but never when it would deprive a party of a legal right. Burr. Law Dic., tit. Relation; *Pearson* v. *Darrington*, 21 Ala. 169. It is never to be adopted when third parties, who are not privies or parties thereto, will be prejudiced thereby. *Montgomery* v. *Ives*, 13 S. & M. 161; *Heath* v. *Ross*, 12 Johns. 140. As the deed of 1866 was void, it cannot validate any thing.

V. The defence that Maxwell's other lands are first liable is set up by the appellees in their amended bill. The answer of the appellant to the allegation is, that all Maxwell's other lands are levied on by other executions, and for that reason, and also because all the lands together are not enough to pay his

judgments, no case for marshalling assets is presented. It cannot be done without prejudice to the appellant, who is restrained by Mrs. Maxwell. *Drake* v. *Collins*, 5 How. 253; *Pallen* v. *Agricultural Bank*, 1 Freem. Ch. 419; s. c. 8 S. & M. 357; *Keaton* v. *Miller*, 38 Miss. 630; *Briggs* v. *Planters' Bank*, 1 Freem. Ch. 574; *Rollins* v. *Thompson*, 13 S. & M. 522; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 409. Mrs. Maxwell is a necessary party to such a proceeding. Story Eq. Pl. § 162. Her rights would be directly affected. As she was not made a party by the appellees in their bill, she could not be by the appellant in his cross-bill.

VI. The defence that four of the judgments are paid is based on Code 1857, p. 547, art. 44; Code 1871, § 1024. In the original bill which was filed under statutes (Acts 1867, pp. 225, 425), and not sworn to, it is averred that these judgments are paid, and it is stated in argument that this averment is not denied, but the answer refers to another answer to a bill on file in the same court, where similar averments are made. This manner of answering was proper pleading, and allowable under the rules of the Chancery Courts in this State. Chancery Rules, 13, 14; 1 Freem. Ch. 18. If, under these rules, the answer was not satisfactory, the complainants should have excepted. 1 Dan. Ch. Prac. 768. Having treated the answer as sufficient, they are now estopped. It is too late to make such a point after final decree.

VII. On the prayer of the appellant's cross-bill, all five of his judgment liens should have been enforced. The original bill prays for an injunction against the five judgments. Courts of equity have general jurisdiction to enforce liens. 1 Story Eq. Jur. § 506; 2 Story Eq. Jur. § 1216 *b*; *Richardson* v. *Warwick*, 7 How. 131; *Jenkins* v. *Bodley*, S. & M. Ch. 338. They will intervene in aid of the legal right, without issue and return of execution. *Hilzheim* v. *Drame*, 10 S. & M. 556; *Berryman* v. *Sullivan*, 13 S. & M. 65; *Fowler* v. *McCartney*, 27 Miss. 509; *Snodgrass* v. *Andrews*, 30 Miss. 472; *Vasser* v. *Henderson*, 40 Miss. 519, 520; *Fleming* v. *Grafton*, 54 Miss. 79.

*Orlando Davis*, on the same side, made an oral argument.

*E. M. Watson*, for the appellees, argued the case orally and filed a brief.

I. The right of Mrs. Lumpkin to have this judgment enjoined as to her land, until that subsequently conveyed to Mrs. Maxwell is exhausted, is clear. Assets will be marshalled in favor of volunteers. *Keaton* v. *Miller*, 38 Miss. 630. Mrs. Maxwell is not a necessary party in order for Mrs. Lumpkin to obtain this relief. *Agricultural Bank* v. *Pallen*, 8 S. & M. 357. As against the four judgments first rendered, the injunction should have been perpetuated, because, as is admitted in the pleadings, they have been paid or discharged. *McAllister* v. *Clopton*, 51 Miss. 257. The proof cannot help the pleading, even if not paid. Executions under them have been levied upon other land sufficient in value to satisfy them. Since Davis admits they are discharged, he can have no relief as to them under his cross-bill. The only judgment in controversy therefore is the one recovered in September, 1866. We will consider separately the reasons why the prayer of our bill should be granted, and that of Davis's cross-bill denied.

II. The relief asked for by our bill should be granted for the following reasons: —

1. Maxwell was solvent on June 12, 1862, and had therefore the right as against his creditors, to give his daughter, Mrs. Lumpkin, the land in controversy. *Wilson* v. *Kohlheim*, 46 Miss. 346. By the instrument of that date, executed by him and his wife, which is a deed duly signed and sealed, he made the gift, intending, as the proof shows, that the title should vest at the time. Mrs. Lumpkin accordingly took possession, but the grantor held the deed for the benefit of the grantee, in order to perfect it, if necessary. This constituted a valid delivery. *Peters* v. *Jones*, 35 Iowa, 512; *Campbell* v. *Mayes*, 38 Iowa, 9; *Tallman* v. *Cooke*, 39 Iowa, 402; *Burkholder* v. *Casad*, 47 Ind. 418. As Mrs. Lumpkin produced the deed in court, it was necessarily delivered at some time, and such delivery related back to the date of its execution. *Irvine* v. *Irvine*, 9 Wall. 617; *Ins. Co.* v. *Colt*, 20 Wall. 560. But if not a deed, this was certainly a memorandum sufficient to take the case out of the Statute of Frauds, and was obligatory when Mrs. Lumpkin took possession. *Magee* v. *Catching*, 33 Miss. 672; *Whitworth* v. *Harris*, 40 Miss. 483; *Byrne* v. *Cummings*, 41 Miss. 192. The parties intended the title to pass.

Mrs. Lumpkin could have recovered the paper by detinue or replevin. Her father's sole object in retaining it was to make the deed in conformity with its stipulations.

2. The appellees are, however, in possession of the land ; and, although their title be weak, Davis cannot recover unless he shows a subsisting lien ; and, if Mrs. Lumpkin's title is void, the legal title to the land is in Maxwell's assignee in bankruptcy. *Allen* v. *Montgomery,* 48 Miss. 101 ; *Stewart* v. *Isidor,* 1 B. R. 485 ; *Catlin* v. *Foster,* 3 B. R. 540. Davis's lien was imperfect when Maxwell was adjudicated a bankrupt : the bankrupt law preserves only liens *in esse ;* and the assignee's title is superior to Davis's lien. *In re Hinds,* 3 B. R. 351, 355 ; *In re Dey,* 3 B. R. 305 ; *In re Bininger,* 3 B. R. 481 ; *Miller* v. *Sherry,* 2 2 Wall. 237 ; *Ashley* v. *Robinson,* 29 Ala. 112, 125 ; *Fetter* v. *Cirode,* 4 B. Mon. 482 ; *Botts* v. *Patton,* 10 B. Mon. 452 ; *In re Sabin,* 12 B. R. 142. When the bankrupt is discharged he is no longer personally liable, and the creditor cannot proceed against his fraudulent transferee. *Hubbell* v. *Flint,* 15 Gray, 550 ; *Graham* v. *Pierson,* 6 Hill, 247 ; *Crouch* v. *Gridley,* 6 Hill, 250 ; *Ruckman* v. *Cowell,* 1 N. Y. 505 ; *Clark* v. *Rowling,* 3 N. Y. 216 ; *Comstock* v. *Grout,* 17 Vt. 512 ; *Harrington* v. *McNaughton,* 20 Vt. 293. Where the creditors of a fraudulent transferee seize the property fraudulently transferred, the creditors of the fraudulent transferor cannot assert any claim against it to their detriment. *Gibbs* v. *Chase,* 10 Mass. 125. The case of *Clark* v. *Rowling,* *ubi supra,* is indorsed by our own court in *McDonald* v. *Ingraham,* 30 Miss. 389.

3. But as the title was in Maxwell's assignee in bankruptcy for the benefit of Maxwell's general creditors, he was entitled to his day in court to show cause, if any he could, why execution should not be issued against the estate. The principle is universally recognized, and is applicable to heirs on judgments recovered against their ancestor, or to purchasers on judgments recovered against their grantors prior to the grant. When a new party is to be charged on execution, a *scire facias* must be issued. *Smith* v. *Winston,* 2 How. 601 ; *Dejarnett* v. *Haynes,* 23 Miss. 600 ; *Hughes* v. *Wilkinson,* 37 Miss. 482 ; *Cocke* v. *Foote,* 49 Miss. 181 ; *Ex parte Foster,* 2 Story, 131. Maxwell

was *civiliter mortuus*, and if the execution was a continuance of the original suit, then by the express letter of the Bankrupt Act the bankrupt should have been replaced by his assignee before it could be proceeded with.

4. The execution must be enjoined, because the court issuing it had no jurisdiction over the subject-matter or the estate of Maxwell at that time. The first section of the Bankrupt Act of 1867 provides that the Bankruptcy Court shall have jurisdiction to ascertain and liquidate liens on the bankrupt's estate. If this jurisdiction is concurrent with that of the State court, yet the property was in the custody of the Bankruptcy Court. High on Receivers, § 50; *Zeigler* v. *Shomo*, 78 Penn. St. 357, 363; *Davis* v. *Anderson*, 6 N. B. R. 145; *Phelps* v. *Sellick*, 8 B. R. 390. Being in the custody of the Bankruptcy Court, the Circuit Court of Tippah County had no right to issue the execution. *Taylor* v. *Carryl*, 20 How. 583. The law is ably discussed, and this question directly decided in our favor, in the following cases and text-books: *Stemmons* v. *Burford*, 39 Texas, 352; *Blum* v. *Ellis*, 73 N. C. 293; *Withers* v. *Stinson*, 79 N. C. 341; *The Skylark*, 4 Biss. 388; *In re Paine*, 17 B. R. 37; Bump on Bank. (10th ed.) 211, 623; Herman on Executions, 40; *Allen* v. *Montgomery*, 48 Miss. 101; *Jones* v. *Leach*, 1 B. R. 595; *McDougald* v. *Reid*, 5 Ala. 810; *Brown* v. *Branch Bank*, 20 Ala. 420; *Alcott* v. *Avery*, 1 Barb. Ch. 347.

III. Davis's cross-bill should have been dismissed.

1. Because, to obtain the relief asked, Davis must show that his judgment is a lien upon the land. *Farned* v. *Harris*, 11 S. & M. 366; *Brown* v. *Bank of Mississippi*, 31 Miss. 454; *Partee* v. *Mathews*, 53 Miss. 140. Davis has no lien if the deed to Mrs. Lumpkin is not fraudulent; and, if it is fraudulent, the title vested in the assignee, unincumbered by the possibility of Davis asserting any lien. The assignee acquires the title of a *bona fide* purchaser for valuable consideration without notice, for, in consideration of the assignment to him, Maxwell's creditors released their debts. *Soule* v. *Shotwell*, 52 Miss. 236.

2. Even, however, if Davis is entitled to the relief asked by his cross-bill, the Chancery Court has no jurisdiction to grant it after bankruptcy: the assignee alone can maintain a bill to

set aside the bankrupt's fraudulent conveyance. *In re People's Mail Steamship Co.*, 2 B. R. 552; *In re Davis*, 2 B. R. 391; *Jones* v. *Leach*, 1 B. R. 595; *Pennington* v. *Sale*, 1 B. R. 572; *In re Snedaker*, 3 B. R. 629; *Stuart* v. *Hines*, 6 B. R. 416; *Markson* v. *Heaney*, 4 B. R. 510; *In re Wynne*, 4 B. R. 23; Bump on Bank. §§ 324, 325, 326. The assignee may sue in the State courts, but he cannot be sued there. The property being in the custody of the Bankruptcy Court, the State court cannot invade its jurisdiction. The assignee cannot be dragged into the State court. Then, reviewing the decisions cited by opposing counsel, counsel contended that none of the cases contemplated the commencement after bankruptcy of a proceeding to enforce a lien.

3. But, however it may have been under the original Bankrupt Act, the Revised Statutes of the United States, passed in 1873, by §§ 563, 711, 4972, confer exclusive jurisdiction on the United States Courts of all matters and proceedings in bankruptcy. *McHenry* v. *La Société Française*, 95 U. S. 58; *Sherwood* v. *Burns*, 58 Ind. 502; *Wente* v. *Young*, 17 B. R. 90. Davis is not protected by U. S. Rev. Stats. § 5597. The repeal of a statute terminates all proceedings under it. *Musgrove* v. *Vicksburg Railroad Co.*, 50 Miss. 677. To meet that rule, § 5597 was passed, and before Davis can bring himself within its benefit he must show the Federal statute which gave him the right to the remedy he was pursuing, and which was repealed by the Revised Statutes. Davis was, however, proceeding in a Mississippi court, and under Mississippi law.

4. Davis was barred of all remedy. Before the assignee was made a party to this suit, his right to set aside the fraudulent conveyance was barred by the two years' Statute of Limitations provided by the bankrupt law. U. S. Rev. Stats. § 5057. Davis cannot effect more by the assignee's rights than the assignee could effect himself. *Brown* v. *Goolsby*, 34 Miss. 437; *Lagow* v. *Neilson*, 10 Ind. 183; *Crofford* v. *Cothran*, 2 Sneed, 492. Apart from the Statute of Limitations, the act making the jurisdiction of the Bankruptcy Court exclusive had taken effect before the assignee was made a party to the suit, and therefore the equitable exception, allowing the creditor to proceed for himself when the assignee refuses to proceed against the fraud-

ulent conveyance, cannot help Davis. The fundamental principle of the bankrupt law is the equal distribution of the bankrupt's assets among his creditors, which is impossible if either the bankrupt or any of his creditors can enforce their claims outside of the Bankruptcy Court. The State court has no jurisdiction of a bill filed by a mortgage or lien creditor of the bankrupt, unless the assignee is a party to such bill; and then equity will treat the assignee as complainant, for the purpose of effecting the ends of justice. Story Eq. Pl. § 516; *Freelander* v. *Holloman*, 9 B. R. 331; *Bank* v. *Cooper*, 20 Wall. 171; *Allen* v. *Montgomery*, 48 Miss. 101; 1 Dan. Ch. Prac. 59, 60; Bump on Fraud. Conv. (4th ed.), 519, 520; *Pratt* v. *Curtis*, 6 B. R. 139; *Edwards* v. *Coleman*, 2 Bibb, 204; *Bradshaw* v. *Klein*, 1 B. R. 542; *In re Metzger*, 2 B. R. 355; *Goodwin* v. *Sharkey*, 3 B. R. 558; *Thurmond* v. *Andrews*, 13 B. R. 157; *Alsabrooks* v. *Cates*, 5 Heisk. 271; *Winters* v. *Claitor*, 54 Miss. 341; *Lawrence* v. *Hand*, 23 Miss. 103; *Foster* v. *Pugh*, 12 S. & M. 416; *Hoe* v. *Wilson*, 9 Wall. 501; *Railroad Co.* v. *Orr*, 18 Wall. 471; *Manly* v. *Kidd*, 33 Miss. 141; *Gifford* v. *Helms*, 98 U. S. 248; *In re Sabin*, 9 B. R. 383.

IV. Reviewing the evidence, the counsel also contended that the title of Mrs. Lumpkin to the land in controversy was *bona fide;* that the facts showed that Maxwell was solvent at the time of the execution both of the deed of 1862 and of that of 1867; that there was enough property besides the land in controversy to pay not only Davis but all Maxwell's other creditors; that the deed of 1867, being made when the deed of 1862 was lost, related back so as to validate the former conveyance; that the gift of the land, which was but a small part of Maxwell's estate, was good as an advancement from a solvent father to his daughter on the occasion of her marriage; and that upon the merits of the case, apart from the questions of jurisdiction and ·of limitation, Mrs. Lumpkin was entitled to the land, as against both Davis and her father's assignee.

CAMPBELL, J., delivered the opinion of the court.

The right of Mrs. Lumpkin must be determined with reference to the deed of April 17, 1866, by which the land was

conveyed to her. The paper of June 12, 1862, had no effect, for want of delivery; and this "memorandum," as it was called and treated by the parties, and the taking possession of the land, and every thing which preceded the execution of the deed of April 17, 1866, must go for nothing. The deed of April 17, 1866, was void as to the creditors of the grantor. It was voluntary, and the grantor was not in a pecuniary condition to make gifts. His liabilities far exceeded his assets. This deed being void, the land conveyed by it was subject to the lien of judgments against the grantor, as if it had not been made. As to them, it is to be considered as not existing. *Pulliam* v. *Taylor*, 50 Miss. 551; *Thomason* v. *Neeley*, 50 Miss. 310; *Shaw* v. *Millsaps*, 50 Miss. 380.

The subsequent bankruptcy of the judgment debtor did not affect the lien of judgments against him. These liens exist by the law of the State, and are preserved unimpaired by the bankrupt law. The discharge of the bankrupt discharges him personally from judgments, but the lien of a judgment against him which had attached to property before the adjudication in bankruptcy is still a lien. The appointment of an assignee, and the assignment to him in pursuance of the law, vest in him the property of the bankrupt, but in the precise condition it was in at the time of the adjudication. He stands in the shoes of the bankrupt, and takes property subject to all liens· and equities which could have been enforced against it if bankruptcy had not occurred. *Yeatman* v. *Savings Institution*, 95 U. S. 764; *Russell* v. *Cheatham*, 8 S. & M. 703; *Talbert* v. *Melton*, 9 S. & M. 9; *Winters* v. *Claitor*, 54 Miss. 341; *Reed* v. *Bullington*, 49 Miss. 223. The bankruptcy of Maxwell did not hinder the enforcement of the lien of a judgment against him by execution. The sale of property bound by the lien of a judgment does not affect the right of the judgment creditor to seize and sell it. Being subject to the lien, it may be seized and sold as the means of making the lien available. *Crowe* v. *Reid*, 57 Ala. 281; *McHenry* v. *La Société Française*, 95 U. S. 58.

The assignee in bankruptcy may draw the matter of adjusting all liens into the District Court of the United States, and himself sell the property, and apply the proceeds under the direction

of said court; but if he finds that the property is so incumbered as to consume its full value in discharging liens to which it is subject, and, therefore, that there is nothing in it for general creditors, he may decline to have any thing to do with it; and in that case the enforcement of the liens by judgment creditors, by the process of the State courts, is not an invasion of the jurisdiction of the courts of the United States, or in contravention of the provisions or the policy of the bankrupt law. *Pressly* v. *Ellis*, 48 Miss. 574. Nor do we think that § 711 of Revised Statutes of United States makes any difference in this respect, both because of the fact that this suit was pending (Rev. Stats. § 5597), and because this contest is not a matter in bankruptcy.

In this case, the bankruptcy occurred in 1868, and the appointment of an assignee and the assignment to him near the close of the year 1869. This bill was filed in 1869, soon after the levy of the execution on the land. The assignee was made a party to the suit in 1875. He has never appeared, nor has he sought by proceeding in the court of the United States to interfere with the land or the litigation about it, as we must assume from the continuance of this litigation. All claim by the assignee to attack the deed of April 17, 1866, has been barred by the two years' limitation of the Bankrupt Act. It is manifest that the assignee has no interest in this controversy, and no concern about it, and that he has acquiesced in this effort of the judgment creditor to obtain satisfaction of his judgment by a sale of the land. And Mrs. Lumpkin cannot make the non-action of the assignee, and lapse of time, as against him, a shield from the attack of Davis, whose right as against her is independent of the assignee. The abstinence from the contest of the assignee leaves Davis's way clear of all obstructions; and the fact that the assignee has lost all right to contest the claim of Mrs. Lumpkin, frees the contest between herself and Davis from any other question than that of its merits, and that we have resolved in favor of Davis.

No case is presented for marshalling assets, as it does not appear that the execution levied on the land in controversy in this suit can be satisfied, in whole or part, out of other lands conveyed by Maxwell, after April 17, 1866.

We recognize the rule that a prior grantee has the right to insist on the devotion of different parcels of property to the satisfaction of a lien to which all are subject in the inverse order of their alienation, so that the property conveyed by the debtor last in point of time shall be first applied to discharge the lien ; but he who seeks to divert a lien creditor from himself to another source of satisfaction to which he should resort, must show clearly an unobstructed source of obtaining such satisfaction.   Protecting himself by presenting another for the sacrifice, he must present one equal to the burden he would shift from himself to him.   The other lands to which the complainant would direct the execution creditor have been levied on by other executions, and are the subject of an adverse claim by Mrs. Maxwell, and of serious litigation between her and the judgment creditor.

We do not regard the answer of Davis, as to the judgments alleged to have been paid, as authorizing the conclusion on the hearing that the allegation of the bill to that effect is to be taken as true.   The answer was sufficient, under the circumstances it discloses, to prevent the operation of Code 1871, § 1024.   It states that the judgments, other than that the execution on which was levied on the land claimed by the complainant, were the subject of another suit, in the same court, between the respondent and another, and that all the facts in reference to those other judgments were set forth in the answer of the respondent in that suit ; which answer he refers to and adopts in this, as to such judgments.   There was no exception to the answer for insufficiency or irrelevancy.   The record shows that the judgments were not in fact paid ; and a rule of practice, created for convenience, should not be perverted to injustice, as would be done by maintaining the view contended for by counsel for the appellees on this matter.   Davis is entitled to the relief sought by his cross-bill.

*Decree reversed, and cause remanded for decree.*