DAY AND PROUDFIT v. J. E. OLD et al.

Assignment of Decree — Void as to Creditors.

A voluntary assignment of a decree in chancery is void as to creditors of the assignor.

J. E. Old was the owner of a decree of the Chancery Court of Tunica county against W. R. C. Lyon and wife for $225, and he asigned this decree to his daughter, Mrs. Julia J. Lyon. Appellants, Day and Proudfit, who were creditors of J. E. Old, filed the bill in this case against J. E. Old and Mrs. Lyon to set aside

1

A voluntary conveyance is *prima facie* void as to existing creditors, and the party claiming under it must rebut this presumption by clear and satisfactory proof. It will not be sufficient to show merely the fair intention of the grantor, and that by good management the property retained by him was sufficient to pay his debts. The proof must show that by the ordinary course of human transactions, the conveyance could not operate to delay, hinder or defeat the claims of prior creditors. The property conveyed must be so inconsiderable when compared with that retained by the grantor, and the debts owed by him, that it could not be supposed that the gift endangered the safety of any of his debts, or could delay their payment. Young *v.* White, 3 Cush. 146.

A voluntary deed was not good against a creditor whose debt was in existence at the time the deed was made. Swayze *v.* McCrossin, 13 S. & M. 317.

A voluntary assignment by an insolvent debtor was *per se* fraudulent as to existing creditors, whether made with a fraudulent intent or not. Catchings *v.* Manlove, 39 Miss. 655; Bogard *v.* Gardley, 4 S. & M. 302.

Where a conveyance may hinder and delay creditors, it is not for that reason alone void, if it were made with a proper intent; but it is void where the main intent is to hinder and delay creditors, and the conveyance is a mere contrivance for that purpose. Farmers Bank *v.* Douglass, 11. S. & M. 469; Ingraham *v.* Grigg, 13 S. & M. 22.

The unlawful intent is necessary to vitiate the conveyance, and must be so alleged in a bill to set it aside. The allegation that the conveyance is "void on its face and fraudulent as to creditors," is insufficient to render the facts appearing on the face of the conveyance, competent evidence to establish fraud, unless it be also alleged that the conveyance was made to hinder, delay or defraud creditors. Hogan *v.* Barnett, 37 Miss. 617.

A voluntary conveyance is not fraudulent *per se* as to creditors. Whether it is fraudulent depends upon the financial condition of the grantor, his

this assignment and to subject the decree to the payment of their debt, alleging that the assignment was voluntary and void as to them. The defendants answered, admitting the indebtedness of J. E. Old to complainants and the assignment of the decree to Mrs. Lyon, but denied that the assignment was voluntary, averring that it was made for a valuable consideration.

The proof was that J. E. Old had leased a plantation for a term of years and was in feeble health. His son-in-law, Mr. Lyon, took charge of the plantation and managed it for him for two

ability to pay debts out of remaining property and like circumstances. If he is wealthy, and owes debts only to a trifling amount, a voluntary conveyance made by him will not be deemed fraudulent. (Bogard v. Gardley, 4 S. & M. 302, and Swayze v. McCrossin, 13 S. & M. 317 disapproved), Wilson v. Kolheim, 46 Miss. 346.

A voluntary conveyance is *prima facie* void as to existing creditors; the grantor's mere indebtedness, however, will not in all cases render such a conveyance void. The presumption of invalidity may be rebutted by evidence showing that he was in prosperous circumstances, unembarrassed, and had property left amply sufficient to pay all his debts. Cowan v. Alsop, 51 Miss. 158.

A voluntary conveyance by an insolvent is void as against his existing creditors, and the property may be subjected to their judgments, though subsequently obtained. Davis v. Lumpkin, 57 Miss. 506.

The legal presumption that a voluntary conveyance of land is fraudulent as to creditors is not rebutted by showing a retention of a reversion of the land in the grantor where all his tangible property is nominally conveyed for the life of the grantee, but the grantor remains in possession and enjoyment of the same; nor by showing the retention by the debtor of other property, unless it is undoubtedly sufficient to readily pay all his debts, and is plainly accessible to the creditors. (Wilson v. Kolheim, 46 Miss. 351, distinguished.) Edmunds v. Mister, 58 Miss. 765.

Where a voluntary conveyance is made by a mother to her son, the fact that she was not actuated by any fraudulent intent, and did not even suppose that she was liable for complainant's debt, is not of itself a defense to a bill to set aside the conveyance. The law presumes that a voluntary conveyance, though resting on proper moral motives, is void as to creditors. Facts may be shown to overcome the presumption of fraud, as that the donor was prosperous, and retained ample means accessible to creditors to discharge all obligations, and that the gift was reasonable, apparently in no serious degree putting in hazard the rights of existing creditors. Where such facts are not shown, the conveyance will be set aside. Cock v. Oakley, 50 Miss. 628.

One is conclusively presumed to have intended fraud if it necessarily and logically results from his conduct. Hilliard v. Cagle, 46 Miss. 309.

The intent of the grantor which will avoid a voluntary assignment, need

years.   During this time his wife, Mrs. Lyon, who is also the daughter of J. E. Old, did the cooking for her husband and eight or ten hands who worked on the place leased by Mr. Old, for which she had never received any compensation.

There is no evidence that Mr. Old ever agreed to pay Mrs. Lyon for this work, or that she demanded anything for it at the time it was rendered.   The assignment of the decree was intended to pay her for this work.   From a decree dismissing their bill, complainants appealed.

APPEALED from Chancery Court, Tunica county, J. B. MORGAN, Chancellor.

Reversed and remanded, January 30, 1882.

not be an actual, corrupt intent.   The law imputes a fraudulent intent if the thing done is unlawful, and naturally results in hindering, delaying and defrauding creditors.   And this rule applies equally where the matter or act that is unlawful is shown by extrinsic evidence, as when it appears on the face of the deed.   Marks *v.* Bradley, 69 Miss. 1; 10 So. 922.

Where the necessary consequence of a written instrument is to hinder, delay or defraud creditors, the maker will be held to have intended to accomplish this, and, as to them, it will be declared fraudulent without reference to the actual intent.   Harman *v.* Hoskins, 56 Miss: 142.

A conveyance in honest payment of a debt is not rendered fraudulent because brought about by the action of other creditors in pressing for collection of their debts.   McAllister *v.* Hosea, 71 Miss. 256; 14 So. 264.

A grantee who takes a conveyance with knowledge of its fraudulent character, or has reasonable ground to suspect it, forfeits its advantages, although the consideration may be meritorious.   Thompson *v.* Furr, 57 Miss. 478.

Defendants, after coming of age, lived with their father on his farm many years, until his death.   He agreed to pay them $250 a year for their labor. They were engaged constantly in his business, having none of their own. Shortly before his death, he conveyed his farm to the sons, though in debt at the time to other persons.   *Held*, not fraudulent, and the deceased had a right to prefer the debts due his sons to those due strangers.   Donly *v.* Ray, 6 So. 324.

The fact that the deed ran to both sons, though the amount due to each was unequal, is not an objection that will avail a third party.   Donly *v.* Ray, 6 So. 324.

A conveyance by a husband to his wife of property worth $6,500, for a consideration of $400, is voluntary, and invalid as to the husband's creditors, prior or subsequent.   Wynne *v.* Mason, 72 Miss, 424; 18 So. 422.

A debtor in failing circumstances may prefer *bona fide* creditors.   Harris *v.* Sledge, 21 So. 783.

The grantee in a voluntary conveyance, and all who take under her as

*Attorneys for appellants, Greer & Adams.*

*Attorney for appellee, W. B. Waddell.*

Brief of Greer & Adams:

This was a bill filed by complainants against their debtor, J. E.
Old, and his assignee, Mrs. Lyons, who was his daughter, to set
aside a conveyance to the said Mrs. Lyons of certain property
which the bill alleges was conveyed to said daughter without con-
sideration. At the time of said transfer it is not denied that said
Old was heavily indebted to complainant, and it is further ad-
mitted that he was a bankrupt. The relationship is also admitted.
There is no contest over the indebtedness which complainant asks
a judgment for, and the only point for adjudication is the one
question whether the conveyance to Mrs. Lyons was voluntary.
Complainants have taken no other proof than to establish the ad-
missions of defendant, Old, that the conveyance was without other
consideration than love and affection. No objection to the com-
petency of these admissions was made, and no effort made to have
them contradicted by Old, his deposition not having been taken
by the defendants. This seems to us conclusive of the case. But,
taking the case from the defendant's theory, we still think we are
entitled to recover.

Only two witnesses testify for the defense, and, of course, we
are to presume they present the whole of the defense. From their
depositons it appears that Mrs. Lyons' husband, either as partner
or agent of J. E. Old, was running Old's farm in his absence
therefrom. During such time Mrs. Lyons did the cooking for

volunteers or with notice, are liable to creditors of the original grantor for
the property or its value. Ames *v.* Dorroah, 76 Miss. 187; 23 So. 768.

A father, indebted to his wife and son, conveyed lands to them jointly,
delivering the deed to the wife alone, and told her it was to secure her.
There was no understanding as to what was to be paid for the property,
and afterwards the wife recovered a judgment against the husband for the
debt. The son knew nothing of the conveyance until after it was recorded,
and he had no agreement with his father that the latter should secure him,
and he never made any claim to the profits of the lands, and permitted his
father to control it. *Held,* that the conveyance was valid as against the
husband's creditors as to the wife, but invalid as to the son, it never having
been delivered to him. Chapman *v.* White Machine Co., 76 Miss. 821; 25 So.
868.

said Lyons about his and Old's business. It is not pretended that she did this cooking by contract or employment, or that she made any charge either against her husband or father for this service. It is true, she thought and expected she would be given something therefor, her witnesses say, but this, it is apparent, was only an afterthought. Now, for the life of us, we cannot see how a daughter who voluntarily renders a service to her father (for we will assume, for the argument, the service was not to her husband) can be placed upon the footing of a *bona fide* purchaser from such father of property. It is in proof that she knew her father was indebted to complainants; it is in proof that she did this work to help pay her father out; and it is not in proof that she charged him a dime or a dollar for this work *at the time she rendered it.* Now, take this in connection with the fact that she does not testify—she who could tell *all* of the facts—taken also in connection with the failure of Old to testify, when his admissions were in proof, showing that he had *given* his daughter this decree which complainants attach—it does seem to us that no doubt can be left on an unprejudiced mind that our theory of the facts is the correct one—that is, that this was only a gift.

On the law of the case we submit the following authorities:

When a conveyance between parties is attacked for fraud, then the relationship of the grantor and grantee is a circumstance to arouse suspicion, if there are any circumstances in proof looking to fraudulent intent. Bump on Fraudulent Conveyances, p. 96; 1 Heiskell, 703; 31 Maine, 93; 45 Ill. 293.

It is a badge of fraud that the grantee *knew* of the insolvent condition of the grantor at the time the conveyance was made. Bump on Fraudulent Conveyances, p. 232; 22 Texas, 45.

Failure to produce the instrument making the transfer is a badge of fraud, and if complainants ask such production and it is refused, it becomes very strong. 5 S. & M. 689.

We regard this case as being one of the fullest in its comments on the badges of fraud that we have ever read. As cases in which the courts have found circumstances showing a conveyance voluntary when it purported to be *bona fide,* we cite 2 S. & M. 42; 1 C. 75; 38 Miss. 630; 1 Humphrey (Tenn.), 335.

The failure of a party to testify, who has been charged with making a fraudulent conveyance, as to matters necessarily within

his personal knowledge, accords a presumption against him, where the proof is not clear and the case he seeks to make could be proved by him if true. 4 Heiskell, 476.

This rule is certainly strengthened where, in a case like the present, admissions of the party have been proven. Having charged fraud in our bill and offered proof to show it, the burden of proof to disprove such intent was on the defendants. 4 Heiskell, 565; 40 Penn. 126; 10 N. Y. (6 Selden) 189.

The law presumes that a voluntary conveyance made upon moral motives is void against existing creditors. But the donee may show circumstances which repel and overcome this presumption, such as that the donor was in prosperous circumstances and retained ample means to discharge his debts. 50 Miss. 529; 51 Miss. 518.

As a summing up, we think, first, that the proof shows this to have been a gift from the father to the daughter. Three witnesses testify to Old's declaration to this effect; there is not a specific denial in the defendant's proof; and the written instrument which the daughter claims to hold the property under is not produced, or its absence accounted for. Old, who could have testified, and within whose knowledge the facts lay better than in the mind of any one, despite the fact that his admissions are in evidence, charging this to be a gift, with intent to defraud his creditors, gives no depositions and is silent under the charge. Mrs. Lyons, the one other person who peculiarly knew what were the facts in the case, and who is the one other person charged with being a party to this legal fraud, remains silent under the charge and leaves to other parties the swearing she should have done.

When these two witnesses are called upon to produce the written instrument under which Mrs. Lyons claims, and which the bill alleges to have been the foundation of a legal fraud, neither responded and neither account for its absence. It is the evidence of the defendant's (Mrs. Lyons's) title; it has been alleged in the sworn bill of the complainants to have been made without valuable consideration; it is entirely within the keeping of the defendant, Mrs. Lyons; her lawyer, son-in-law and witness, Mr. Waddell, drew it, saw it, appreciated its importance, and yet it is not brought to the light of day.

Second—The service rendered by Mrs. Lyons was evidently a voluntary one, and it is also evident that she rendered this service

to her husband, herself, and family, rather than to her father. The value of this service is not proved; no testimony is offered to show that she did it by contract or otherwise than on her own motion. Her witness and her husband say she did it for his benefit, "and that she might help her father pay off this very indebtedness." She makes no charge therefor, has no agreement with her father or her husband to be paid for the service, and does not testify that she has an indebtedness for such services against her father.

In conclusion, therefore, we ask this court, bearing in mind the relationship of the parties, their silence under the charges of fraud, their failure to produce the written evidence of title, the knowledge that the donee had of the owner's insolvency, the fact that we were existing creditors when this gift was made, to reverse the judgment of the court below and give us our judgment here.

Brief of V. B. Waddell:

James E. Old was the owner of a decree in the Chancery Court for $225. He was justly indebted to his daughter, Mrs. Lyons, more than that amount, but everything he owned, except this decree, was under mortgage to Day & Proudfit, and he had no other means of paying Mrs. Lyons. V. B. Waddell, a son-in-law of Mrs. Lyons, knowing all about the facts of the case, and that Colonel Old had purchased and paid for the decree by paying Mrs. White her money, undertook to secure this decree to Mrs. Lyons in payment of what Colonel Old owed her. He first got a transfer of the decree, indorsed on the margin of the chancery record, to Colonel J. E. Old, and then wrote an assignment of the decree to Mrs. Lyons; sent it to Colonel Old in Memphis; he signed it and returned it.

The charge is that the foregoing transaction was voluntary, without consideration, and fraudulent. The answer denies every allegation of the bill affecting the *bona fides* of the transaction.

He who alleges fraud must prove it. Parkhurst *v.* McGraw, 2 Cush. 134.

It is conceded that a voluntary conveyance is fraudulent as to existing creditors. But the proof shows that it was not voluntary in this case. It was done at the instance of Mrs. Lyons, to whom Colonel Old was indebted *bona fide.*

The question here is not, is the order of the chancellor dismissing the bill right? but the question is, is it manifestly wrong? The proof shows that it is unquestionably right. The complainants prove nothing whatever as against Mrs. Lyons. Colonel Old's statements, not in Mrs. Lyons's presence, cannot be taken as evidence affecting her rights. Mrs. Lyons clearly establishes the *bona fides* of the transaction.

Considerable stress is laid upon the fact that we have not produced the written assignment of Colonel Old to Mrs. Lyons. It never occurred to Mrs. Lyons's counsel that it was necessary to prove what was alleged in the bill and admitted in the answer.

The argument of counsel for the complainant proceeds upon an assumption of facts not sustained by proof. His "theory of the facts," as he terms it, is a theory that is not supported by evidence, and, we take it, the court will be governed by *the facts,* not theories. We do not resort to theories; *we furnish the facts.*

Complainant's counsel proceeds upon the idea that Colonel Old's admissions are evidence as against Mrs. Lyons. This cannot be true, and hence his "theory" is without foundation.

Stress is laid upon the fact that the witness, Waddell, is Mrs. Lyons's lawyer, son-in-law, and witness. We do not think the record will sustain his character in *each role.*

This controversy does not involve J. E. Old's indebtedness to Day & Proudfit. The only question is, did J. E. Old owe Mrs. Lyons $225, and was the transfer of the decree a *bona fide* transaction? That he did owe Mrs. Lyons the debt, and that the transfer was *bona fide,* is clearly shown by the evidence of W. R. C. Lyons and V. B. Waddell. The authorities cited by the appellant's counsel are well enough, but they have no application to the facts in this case.

OPINION.—*Per curiam:*

We have diligently searched this record and failed to find that Mrs. Lyons had any legal claim on Mr. Old for her services, for which it is claimed that he paid her by the transfer of the decree which is the subject of this suit. She was, therefore, a voluntary assignee of the decree, and is not entitled to hold it against the creditors of Mr. Old.

*Decree reversed* and cause remanded for a decree in favor of the appellants.